T.C. Memo. 2007-86


UNITED STATES TAX COURT


DIANE C. LINCIR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10138-04.                Filed April 11, 2007.


        P and her former spouse were parties to earlier
litigation in this Court in which P stipulated she was
not entitled to relief under former sec. 6013(e),
I.R.C. 1986.  After this stipulation was filed and
before this Court issued its first opinion in the
earlier litigation, the Congress enacted sec. 6015(b)
and (c), I.R.C. 1986, which provides avenues of relief
that were not available under the former statute.  The
Congress also enacted sec. 6015(g)(2), I.R.C. 1986,
which provides that a final court decision "shall be
conclusive" except as to qualification for relief under
sec. 6015(b) or (c), but that the exception applies
only if both of the following apply:  (1) The relief
was not an issue in the proceeding that resulted in the
final court decision and (2) the court does not
determine that "the individual participated
meaningfully" in the proceeding that resulted in the
final court decision.

The earlier litigation resulted in a decision that became final. <u>Lincir v. Commissioner</u>, T.C. Memo. 1999-98, supplemented 115 T.C. 293 (2000), affd. 32 Fed. Appx. 278 (9th Cir. 2002). P filed the instant case for innocent spouse relief under sec. 6015, I.R.C. 1986. P moves for partial summary judgment that she is not barred from claiming innocent spouse relief even though, for purposes of the instant motion only, P concedes her meaningful participation in the earlier proceeding, "within the meaning of I.R.C. §6015(g)(2)".

<u>Held</u>: P's stipulated concession precludes her entitlement to judgment as a matter of law, and so P's partial summary judgment motion is denied.

<u>Michael D. Savage</u>, for petitioner.

<u>Michael R. Skutley</u>, for respondent.

MEMORANDUM OPINION

CHABOT, <u>Judge</u>: This matter is before us on petitioner's motion under Rule 121[1] for partial summary judgment that petitioner is permitted to claim relief under section 6015[2] for 1978 through 1982, because relief under that section was not available to her when she litigated income tax deficiencies for the same years in a prior case in this Court.

---

[1] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced at the time the petition in the instant case was filed.

The instant case is a claim for "innocent spouse" relief under subsection (b) or (c) of section 6015. See Rules 320-325; sec. 6015(e). The prior case is docket No. 22934-89, hereinafter sometimes referred to as the 1989 case.

The issue for decision is whether to grant petitioner's motion for partial summary judgment that she is not barred by the doctrine of res judicata from innocent spouse relief under section 6015, even if she meaningfully participated in the 1989 case.[3]

Our statements as to the facts are based entirely on the parties' stipulations of facts and exhibits, those matters that are admitted in the pleadings, those matters that are admitted in the motion papers, those matters set forth in affidavits submitted by the parties, and the opinions issued by this Court in the 1989 case.

---

[3] Petitioner's motion does not use the term "res judicata", or the term "claim preclusion". However, we conclude from the parties' legal memoranda that the instant motion is intended to deal solely with the application of res judicata and, even in that limited setting, is based on petitioner's limited concession as to meaningful participation in the 1989 case. See infra note 4. So, for example, petitioner's motion does not deal with the collateral estoppel defenses raised in respondent's answer. See Rule 39.

Also, we note that respondent did not file a cross-motion on this issue. See Elect. Arts, Inc. v. Commissioner, 118 T.C. 226, 238, 278 (2002).

## Background

When the petition was filed in the instant case, petitioner resided in San Pedro, California. Petitioner filed joint income tax returns with her then-husband, Tom I. Lincir (hereinafter sometimes referred to as Lincir), for each of the years 1978 through 1982. These years were the subject of litigation in the 1989 case, in which respondent determined deficiencies in, and additions to, petitioner's and Lincir's Federal income tax for 1978 through 1982 aggregating more than $600,000; respondent also determined that petitioner and Lincir were liable for increased interest on underpayments attributable to a tax-motivated transaction under section 6621(c). Issues in the 1989 case were addressed in Lincir v. Commissioner, T.C. Memo. 1999-98, and Lincir v. Commissioner, 115 T.C. 293 (2000), affd. 32 Fed. Appx. 278 (9th Cir. 2002). We summarize the factual and procedural background briefly here and make additional findings helpful in ruling on the instant motion.

The setting of the 1989 case is described as follows in Lincir v. Commissioner, T.C. Memo. 1999-98:

> The deficiencies in this case result from respondent's disallowance of certain losses. The losses include those attributable to petitioners' [i.e., petitioner's and Lincir's] participation in the "Arbitrage and Carry" gold trading promoted by Futures Trading, Inc. (FTI). The losses also include those attributable to petitioners' participation in the Treasury bill (T-bill) option and stock forward transactions promoted by Merit Securities, Inc. (Merit), a company that is related to FTI.

On September 18, 1989, Louis Samuel filed the petition for petitioner and Lincir in the 1989 case. On January 21, 1992, Michael D. Savage (petitioner's counsel in the instant case) entered his appearance in the 1989 case. On April 9, 1992, the petition in the 1989 case was amended to claim innocent spouse treatment for petitioner under section 6013(e) as it then existed. On July 1, 1992, the parties in the 1989 case entered into a stipulated settlement of certain of the tax shelter issues. The 1989 case was set for trial in Los Angeles and then continued generally. There followed numerous orders, reports, and a stipulation of facts, and the 1989 case was set for trial in San Francisco. The 1989 case was again continued and again set for trial in San Francisco. The 1989 case was then consolidated with numerous other dockets, then some of those dockets were severed from the consolidated group, then the trial for the remaining dockets in the consolidated group (including the 1989 case) was again continued, and again set to take place in San Francisco. On August 1, 1996, petitioner and Lincir entered into a stipulation of settled issues relating to certain tax shelter issues, agreeing to be bound by the determinations as to those issues in certain designated lead cases. On August 15, 1996, the 1989 case was severed from consolidation. On January 30, 1997, there was a 1-day trial in the 1989 case. At the conclusion of the trial in the 1989 case, the parties thereto

stipulated orally that petitioner "conceded the innocent spouse issue under section 6013(e)".  See Lincir v. Commissioner, T.C. Memo. 1999-98 n.3.  This concession was embodied in a written stipulation of settled issues in the 1989 case, filed on March 17, 1997.

Petitioner meaningfully participated in the 1989 case within the meaning of section 6015(g)(2).[4]

On January 28, 1999, this Court decided in favor of the Commissioner the issues decided in the lead cases; none of the taxpayers in the lead cases appealed this Court's decision.  This Court's opinion in the 1989 case was filed thereafter on March 29, 1999.  Lincir v. Commissioner, T.C. Memo. 1999-98.  A dispute arose regarding the computations under Rule 155 in the 1989 case; this was resolved in favor of respondent.  Lincir v. Commissioner, 115 T.C. 293 (2000).  Decision was entered October 2, 2000.  Petitioner and Lincir appealed.  This Court's determinations were affirmed.  Lincir v. Commissioner, 32 Fed. Appx. 278 (9th Cir. 2002).

After the trial and before this Court filed the first opinion in the 1989 case, the Congress enacted the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, hereinafter sometimes referred to as the

---

[4] So stipulated.  The parties further stipulate that this stipulation "is made solely for purposes of the petitioner's motion for partial summary judgment and for no other purpose."

1998 Act. Section 3201(e)(1) of the 1998 Act repealed section 6013(e), the innocent spouse provisions which had been in effect at the time of the trial in the 1989 case (112 Stat. 740); section 3201(a) of the 1998 Act enacted section 6015 (112 Stat. 734). Section 3201(g)(1) of the 1998 Act provided in pertinent part that both the section 6013(e) repeal and the section 6015 enactment "shall apply to * * * any liability for tax arising on or before such date [the date of the enactment of the Act, July 22, 1998] but remaining unpaid as of such date." 112 Stat. 740.

After petitioner and Lincir filed their notice of appeal from our decision in the 1989 case and before that decision was affirmed by the Court of Appeals, the Congress enacted the Consolidated Appropriations Act, 2001, which included the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, 114 Stat. 2763, 2763A-587, hereinafter sometimes referred to as the 2000 Act. The 2000 Act made several changes to section 6015, including the enactment of the present texts of section 6015(g)(2) and section 6015(e)(1)(A). Pars. (2) and (3)(B) of sec. 313(a) of Appendix G of Pub. L. 106-554, 114 Stat. at 2763A-640, 2763A-641. The 2000 Act provided in pertinent part (sec. 313(f) of Appendix G of Pub. L. 106-554) that these changes "shall take effect on the date of the enactment of this Act. [Dec. 21, 2000]." 114 Stat. at 2763A-643.

On November 21, 2001, while the 1989 case was still before the Court of Appeals, petitioner filed with respondent a Form 8857, Request for Innocent Spouse Relief. At that time, respondent had not yet begun collection activities against petitioner, within the meaning of section 6015(c)(3)(B). On April 14, 2004, respondent issued a Notice of Determination denying the requested innocent spouse relief.

Discussion

I. The Setting

The matter before us in petitioner's motion for partial summary judgment is quite limited.

In the instant case's answer, respondent relies on (1) the doctrine of res judicata to bar any relief under section 6015, (2) the doctrine of collateral estoppel to bar relitigation of whether petitioner knew or had reason to know of substantial understatements of tax for the years in the 1989 case, and (3) the doctrine of collateral estoppel to bar relitigation of whether it would be inequitable to hold petitioner jointly liable for the deficiencies for the years in the 1989 case.

Thus the effect of our ruling on petitioner's motion is to set the parameters for further litigation on whether petitioner is precluded from making claims under section 6015. The actual claims under section 6015 have not yet been presented.

II. <u>Summary Judgment</u>

Summary judgment is a device used to expedite litigation; it is intended to avoid unnecessary and expensive trials. However, it is not a substitute for trial; it should not be used to resolve genuine disputes over material factual issues. <u>Cox v. American Fidelity & Casualty Co.</u>, 249 F.2d 616, 618 (9th Cir. 1957); <u>Vallone v. Commissioner</u>, 88 T.C. 794, 801 (1987). A decision will be rendered on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is not any genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b). A partial summary adjudication may be made which does not dispose of all the issues in the case. <u>Id.</u>

Because the effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an opportunity for a trial, the motion should be "cautiously invoked" and granted only after a careful consideration of the case. <u>Associated Press v. United States</u>, 326 U.S. 1, 6 (1945); <u>Cox v. American Fidelity & Casualty Co.</u>, 249 F.2d at 618; <u>Kroh v. Commissioner</u>, 98 T.C. 383, 390 (1992).

Petitioner, as the moving party, has the burden of showing the absence of a genuine issue as to any material fact. For these purposes, the party opposing the motion is to be afforded

the benefit of all reasonable doubt, and the material submitted by both sides must be viewed in the light most favorable to the opposing party; that is, all doubts as to the existence of an issue of material fact must be resolved against the movant. E.g., Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); Dreher v. Sielaff, 636 F.2d 1141, 1143 n.4 (7th Cir. 1980); Kroh v. Commissioner, 98 T.C. at 390.

In the instant case, respondent has not filed any cross-motion for partial summary judgment. Where, as in the instant case, only one side has moved for summary judgment, there is implicit in the movant's obligations as to material facts that the movant has to persuade the Court that she has correctly identified what facts are material. Elect. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).

Respondent "strongly agrees with the material facts surrounding the narrow issue that petitioner presents in her motion."

We proceed to consider whether partial summary judgment for petitioner may be rendered as a matter of law. Our understanding of what are the material facts affects our conclusions as to how the law applies.

III.  Res Judicata

A.  In General

The Supreme Court in Commissioner v. Sunnen, 333 U.S. 591, 597 (1948), summarized res judicata, also known as claim preclusion, as follows:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."  Cromwell v. County of Sac, 94 U.S. 351, 352.  The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. * * *

As to the application of the doctrine in the context of income tax litigation the Court stated in Sunnen:

> Income taxes are levied on an annual basis.  Each year is the origin of a new liability and of a separate cause of action.  Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. * * * [Id. at 598.]

As a general rule, where the Tax Court has entered a decision for a taxable year, both the taxpayer and the Commissioner (with certain exceptions) are barred from reopening that year.  Burke v. Commissioner, 105 T.C. 41, 47 (1995); Hemmings v. Commissioner, 104 T.C. 221, 233 (1995).  It has also been held that "the Tax Court's jurisdiction, once it attaches, extends to the entire subject of the correct tax for the

particular year." Erickson v. United States, 159 Ct. Cl. 202, 309 F.2d 760, 767 (1962); see Naftel v. Commissioner, 85 T.C. 527, 533 (1985).

An agreed or stipulated judgment is a judgment on the merits for purposes of res judicata. Baker v. IRS, 74 F.3d 906, 910 (9th Cir. 1996), and cases there cited. It follows that, for res judicata purposes, the decision incorporates those elements that the parties have settled by stipulation as well as those that have been redetermined by the Court.

Res judicata is essentially a court-created rule. Commissioner v. Sunnen, 333 U.S. at 597. Although the general outlines of the rule are relatively straightforward, the details applicable in certain cases may be quite intricate. See, e.g., the discussion in Hemmings v. Commissioner, 104 T.C. at 230-235. In addition, the Congress sometimes enacts legislation that overrides or modifies res judicata. See, e.g., Burke v. Commissioner, 105 T.C. at 47 (opinion of the Court), 52 (Chabot, J., concurring), 62-63 (Swift, J., concurring in the result only).

B. Innocent Spouse

Under the law before the 1998 Act, the cause of action in the 1989 case included the possibility of innocent spouse relief. Thus, but for the 1998 Act, the resolution of the 1989 case by entry of decision which became final would have precluded

reopening the "claim of liability or non-liability relating to a particular tax year", in the instant case, 1978 through 1982. Commissioner v. Sunnen, 333 U.S. at 598; Vetrano v. Commissioner, 116 T.C. 272, 280 (2001). In particular, for these purposes it would not matter that the innocent spouse claim in the 1989 case was resolved by the parties' stipulation rather than by the Court's holding on the merits.

The 1998 Act revised the innocent spouse rules to provide avenues for relief that were not available under the former statute, provided for elections to claim certain kinds of relief, gave jurisdiction to this Court "to determine the appropriate relief available to the individual under this section" (sec. 6015(e)(1)(A)), and repealed former section 6013(e). Newly enacted section 6015(e)(3) provided as follows:

> (3) Applicable rules.--
>
> (A) Allowance of credit or refund.--Except as provided in subparagraph (B), notwithstanding any other law or rule of law (other than section 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.
>
> (B) Res judicata.--In the case of any election under subsection (b) or (c), if a decision of the Tax Court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the Tax Court determines that the individual participated meaningfully in such prior proceeding.

(C) Limitation on Tax Court jurisdiction.--If a suit for refund is begun by either individual filing the joint return pursuant to section 6532--

(i) the Tax Court shall lose jurisdiction of the individual's action under this section to whatever extent jurisdiction is acquired by the district court or the United States Court of Federal Claims over the taxable years that are the subject of the suit for refund; and

(ii) the court acquiring jurisdiction shall have jurisdiction over the petition filed under this subsection.

The 2000 Act struck out subparagraphs (A) and (B) of original section 6015(e)(3) and enacted new section 6015(g) as follows:

(g) Credits and Refunds.--

(1) In general.--Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.

(2) Res judicata.--In the case of any election under subsection (b) or (c), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

(3) Credit and refund not allowed under subsection (c).--No credit or refund shall be allowed as a result of an election under subsection (c).

IV.  Parties' Contentions

Both sides treat section 6015(g)(2) as the controlling statute; their disputes center on a Treasury regulation interpreting this statute.

Petitioner contends that relief under section 6015 was not available to her in the 1989 case and so, under Treasury regulations, she is to be treated as not having meaningfully participated in the 1989 case, whether or not she in fact meaningfully participated.  Petitioner concludes that, "as a matter of law she is not barred by the 'meaningful participation' rule from asserting innocent spouse status under section 6015 in this case."  Petitioner bases her contention that relief under section 6015 was not available in the 1989 case on the following: (1) When the record was closed in the 1989 case, the 1998 Act had not yet been enacted, so section 6015 relief could not have been claimed; (2) section 6015 as enacted by the 1998 Act required exhaustion of administrative remedies and, even if petitioner had applied promptly when the administrative remedies became available, she would not have been able to petition this Court "until July 13, 1999--four months after the Court entered its decision in the 1989 case";[5] (3) until January 17, 2001, when

---

[5] The Court entered the decision on Oct. 2, 2000, after resolution of a Rule 155 dispute.  Petitioner may be referring to the date of the Court's initial opinion in the 1989 case. Petitioner points out that the Court ordinarily does not permit a

(continued...)

proposed regulations were published explaining the allocation systems "petitioner did not even know whether * * * it would be worth the effort (not to mention this Court's resources), to seek relief"; and (4) because of the 2-year election rule under section 6015 as enacted by the 1998 Act, petitioner was not required to seek relief under section 6015 while the 1989 case was pending.

Respondent notes that the effective date of the regulation on which petitioner relies precludes its application to petitioner's case,[6] but agrees that "the reasoning behind Treas. Reg. § 1.6015-1(e), that a taxpayer should not be barred from raising section 6015 if the defense was unavailable because of the effective date of section 6015, should apply with equal force here."[7] Respondent contends that petitioner's motion should nevertheless be denied because the section 6015 innocent spouse defense was available to petitioner in the 1989 case, based on the following:  (1) Reopening the record is within the discretion

---

[5](...continued)
new issue to be raised during the Rule 155 computation proceedings.

[6] The parties stipulated that petitioner filed her request for innocent spouse relief on Nov. 21, 2001.  The regulations apply to requests filed on or after July 18, 2002.  Sec. 1.6015-9, Income Tax Regs.

[7] To the same effect, see our discussion in Trent v. Commissioner, T.C. Memo. 2002-285.  See also Hopkins v. Commissioner, 120 T.C. 451 (2003).

of the Court and "petitioner chose to forego such opportunities [to move the Court to reopen the record before decision was entered in the 1989 case], and should not be allowed to set aside her decision well after the fact"; (2) although section 6015 as enacted by the 1998 Act provided for administrative remedies, "nothing in section 6015 indicates that this was intended to be the sole means to raise section 6015"; (3) res judicata effects cannot be avoided "simply because a section 6015 claim was not economically worth her while prior to the Commissioner promulgating his proposed regulations under the allocation rules"; and (4) petitioner's interpretation of the 2-year election rule would make section 6015(g)(2) into "irrational surplusage", because under that interpretation the res judicata rule could always be avoided.

The parties dispute the significance of our opinions in Noons v. Commissioner, T.C. Memo. 2004-243, and Butler v. Commissioner, 114 T.C. 276 (2000). Petitioner states: "this court may wish to consider whether Noons (like Butler) is correctly decided."

We agree with respondent's conclusion that petitioner is not entitled to summary judgment as a matter of law.

V. Conclusions

The Congress chose to provide a statutory rule as to res judicata in section 6015(e)(3)(B) (under the 1998 Act) and then

in section 6015(g)(2) (under the 2000 Act).[8]  The statutory language provides that "if a decision of a court * * * has become final, such decision <u>shall be conclusive</u>".  Sec. 6015(g)(2) (emphasis supplied).  An exception is provided, but the statute states that exception "shall not apply if the court determines that the individual <u>participated meaningfully in such prior proceeding</u>."  <u>Id.</u> (emphasis supplied).

Both sides focus on the following sentence in sec. 1.6015-1(e), Income Tax Regs.: "A requesting spouse has not meaningfully participated in a prior proceeding if, due to the effective date of section 6015, relief under section 6015 was not available in that proceeding."  See <u>supra</u> text at notes 6 and 7.

The regulation provides a partial definition of the statutory language.  Petitioner contends this partial definition helps her cause and she qualifies for its benefits.  Respondent does not dispute the effectiveness of this partial definition to help some innocent spouse claimants but contends that this petitioner does not satisfy the requirements.  Cf. <u>Rauenhorst v. Commissioner</u>, 119 T.C. 157, 167-173 (2002); <u>Automated Packaging Systems, Inc. v. Commissioner</u>, 70 T.C. 214, 225 (1978) (Chabot, J., concurring).

_____

[8] So that "he that runs may read", the Congress headed this provision "Res judicata" in both the 1998 Act and the 2000 Act.

The parties agree that there is no genuine issue as to any material fact (Rule 121(b)), but their dispute as to the meaning of the regulation implies in the instant case a disagreement as to what are the material facts. However, we are spared the necessity in the instant case of exploring the nuances of the regulation and determining which are the material facts and their consequences.

Whatever may be the precise meaning of the regulation sentence the parties focus on, that sentence is an interpretation of the meaningful participation language of section 6015(g)(2). The parties have stipulated for purposes of this motion as follows:

> 11.  Petitioner meaningfully participated in the 1989 case within the meaning of I.R.C. § 6015(g)(2).

We understand this stipulation to be an agreement that, whatever facts are necessary to a conclusion of meaningful participation under section 6015(g)(2),[9] those are the facts in the instant case. (See _supra_ note 4.) Neither side has asked to be relieved from the effects of this stipulation. See Rule 91(e) (second sentence). This stipulation is not plainly in conflict with the undisputed evidence in the record. Cf. _McLaulin v. Commissioner_,

---

[9] See, e.g., discussion in _Huynh v. Commissioner_, T.C. Memo. 2006-180, and cases cited therein.

115 T.C. 255, 257 n.2 (2000), affd. 276 F.3d 1269 (11th Cir. 2001); Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976). Petitioner was advised by counsel in the 1989 case and is advised by counsel in the instant case. We do not see any special circumstances that would warrant us, sua sponte, to relieve any party in the instant case from the effects of the "meaningfully participated" stipulation.

Thus, however we resolve the legal questions, the effect of the stipulation is that petitioner "participated meaningfully" in the 1989 case, within the meaning of section 6015(g)(2), the controlling statute.

In Vetrano v. Commissioner, 116 T.C. at 278, we described the effect of section 6015(g)(2)'s general rule as follows:

> The above provision prescribes the effect that a final court decision for a particular taxable year will have on a subsequent election by the taxpayer under subsection (b) or (c) of section 6015 for the same taxable year. By its terms, an individual cannot make an election under section 6015(b) or (c) for any taxable year that is the subject of a final court decision, unless the individual's qualification for relief under section 6015(b) or (c) was not an issue in the prior court proceeding and the individual did not participate meaningfully in the prior proceeding. See sec. 6015(g)(2). Stated differently, an individual who participated meaningfully in a court proceeding is precluded from electing relief under section 6015(b) or (c) for the same taxable year after the decision of the court becomes final, whether or not the individual's qualification for relief under section 6015(b) or (c) was an issue in the prior proceeding. See sec. 6015(g)(2).

It follows that the parties' stipulation forecloses petitioner from showing (within the confines of her motion) that she is entitled to the benefit of the statutory exception; it then follows that petitioner is not entitled to judgment as a matter of law on her partial summary judgment motion.

<u>An appropriate order will be issued denying petitioner's motion for partial summary judgment</u>.